Ryan A. Semerad, Esq.
Wyoming Bar No. 7-6270
**THE FULLER & SEMERAD LAW FIRM**
242 South Grant Street
Casper, Wyoming 82601
Telephone: 307-265-3455
Facsimile: 307-265-2859
Email: semerad@thefullerlawyers.com

*Attorney for Defendant Kari Nelson*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF WYOMING**

| | |
|---|---|
| KIRVEN LAW, LLC, a Wyoming limited liability company, )<br>)<br>)<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>KARI NELSON, an individual, )<br>)<br>Defendant. ) | **CASE NO. 23-cv-00010-ABJ** |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Assuming the truth of Plaintiff Kirven Law, LLC's factual allegations in its Complaint, Defendant Kari Nelson did not breach the relevant contract, which prohibited Ms. Nelson from sharing certain materials with others, nor did she misappropriate any qualifying "trade secrets." Thus, Plaintiff has failed to state a claim upon which relief may be granted and this Court should dismiss its Complaint.

## I.     INTRODUCTION

Plaintiff, a law firm based in Sheridan, Wyoming, has sued Ms. Nelson, one of Plaintiff's former paralegals, for allegedly downloading certain materials from Plaintiff's cloud-based case

1

management system onto her personal computer.  Plaintiff predicates this lawsuit on its belief that, in accessing and downloading these materials from Plaintiff's case management system, Ms. Nelson has disclosed or misused confidential information, misappropriated trade secrets, or both. Plaintiff has failed to state any claim against Ms. Nelson as a matter of law.

*First*, Plaintiff's breach of contract claim fails to contain sufficient facts from which a court can draw a reasonable inference that Ms. Nelson improperly disclosed or otherwise misused any confidential information, that Plaintiff suffered any damages as a result of Ms. Nelson's alleged conduct, or that Plaintiff is entitled to damages under the circumstances as alleged.  The relevant contractual provision at issue—Plaintiff's Confidentiality Policy and Pledge, *see* Exhibit A to Complaint—prohibits improper disclosure of nonpublic information, *i.e.*, "confidential information."  Because Plaintiff does not allege that Ms. Nelson shared any confidential information with anyone, Plaintiff has failed to state a claim for breach of contract.  Further, Plaintiff alleges that the materials Ms. Nelson allegedly accessed and downloaded largely consisted of publicly filed pleadings or other litigation materials that are necessarily made public or shared with others.  Any materials that are publicly available or shared with others cannot be considered nonpublic.  For this separate reason, to the extent Plaintiff predicates its breach of contract claim on publicly available or shared information, Plaintiff has failed to state a claim for breach of contract.

*Second*, Plaintiff has failed to plead a misappropriation of trade secrets claim because it has failed to identify any alleged trade secrets with sufficient particularity.  Further, Plaintiff has not alleged that the information, documents, or records Ms. Nelson allegedly downloaded to her personal computer have independent economic value derived from being not being generally

known or readily ascertainable to others who may profit from or make economic use of these materials. Thus, Plaintiff has failed to state a claim for misappropriation of a trade secret.

*Third*, because Plaintiff has failed to allege that Ms. Nelson has disclosed any confidential information to others or misappropriated "trade secrets," Plaintiff's requests for a preliminary and permanent injunction are unfounded. Thus, Plaintiff has failed to state a request for injunctive relief that may be granted.

## II.    RELEVANT FACTUAL ALLEGATIONS

Plaintiff alleges that Ms. Nelson started working as a paralegal for Plaintiff on May 3, 2021. *See* Complaint (ECF No. 4) at 2 (¶ 7). Plaintiff alleges that, "as a condition of accepting a full-time, in-office, paralegal position with Plaintiff," Ms. Nelson agreed to and signed Plaintiff's "Confidentiality Policy and Pledge." *Id.* (¶ 8). Plaintiff attached what purports to be Ms. Nelson's signed Confidentiality Policy and Pledge (the "CPP") as Exhibit A to its Complaint. *See id.* at 9.

The CPP states that "[a]ny information that an employee learns about Kirven Law, LLC, or its clients, as a result of working for Kirven Law, LLC that is not otherwise publicly available constitutes confidential information." *Id.* It further proscribes disclosure of any such "confidential information" to "anyone who is not employed by Kirven Law, LLC or to other persons employed by Kirven Law, LLC who do not need to know such information to assist in rendering services." *Id.* The CPP separately and more broadly prohibits "disclosure, distribution, electronic transmission or copying of . . . confidential information." *Id.* The CPP warns that "[a]ny employee who *discloses* confidential Kirven Law, LLC information will be subject to disciplinary action (including possible termination), even if he or she does not actually benefit from *the disclosure* of such information." *Id.* (emphasis added). To this end, the CPP does not identify Plaintiff's entitlement to recover any damages for improperly accessing or reviewing "confidential

information" without disclosing these sensitive materials. *See id.* The CPP requires employees to sign and acknowledge that they understand the CPP and "pledge *not to disclose* confidential information." *Id.* According to Exhibit A attached to Plaintiff's Complaint, Ms. Nelson appears to have signed the CPP on May 3, 2021. *Id.*

Plaintiff uses an online case management system called "Clio," "which is a cloud-based software" that allows virtual access to "files and calendars" so long as a user has internet access and a valid username and password. *See id.* at 2 (¶ 9). Plaintiff uploads "all documents to Clio." *Id.* (¶ 10). To facilitate her work as a paralegal for Plaintiff, Plaintiff granted Ms. Nelson access to the files and materials on Clio by issuing Ms. Nelson a username and password. *Id.* (¶ 11).

On December 2, 2022, Plaintiff's "senior staff" met with Ms. Nelson to "discuss issues related to her work product." *Id.* (¶ 13). On December 6, 2022, Ms. Nelson allegedly (and unsurprisingly given her alleged less-than-positive performance review) contacted a different employer about possible opportunities. *Id.* (¶ 14). This unnamed "outside employer" allegedly (and also unsurprisingly) asked Ms. Nelson to provide a writing sample. *Id.* at 3 (¶ 15). On December 6, 2022, "at various times after 10:00 p.m.," Ms. Nelson allegedly downloaded multiple documents from Clio to her home computer, including a motion to suppress. *Id.*

The next day, Ms. Nelson allegedly had a text message conversation with another employee of Plaintiff's about drafting a "complex criminal document that demonstrates my writing ability and ability to research." *Id.* (¶ 16). Ms. Nelson supposedly thought a motion to suppress would be "easiest." *Id.*

Plaintiff alleges that Ms. Nelson interviewed for a position at "a different law firm in Sheridan, Wyoming, on or about December 16, 2022." *Id.* (¶ 17).

On December 19, 2022, Plaintiff alleges that Ms. Nelson downloaded "over four hundred (400) different client folders from Plaintiff's Clio . . . onto [Ms. Nelson's] home computer." *Id.* (¶ 18). Plaintiff attached another exhibit to its Complaint, Exhibit G, describing the materials that Ms. Nelson allegedly downloaded from Plaintiff's Clio on December 19, 2022. *See* Complaint at 16-125. Exhibit G identifies these materials as trial court pleadings, such as motions, entries of appearance, requests for continuances, requests for court reports, proposed orders, proposed findings of fact and conclusions of law, notices, and subpoenas, as well as some discovery materials, such as requests and responses. *See id.* In the Complaint itself, Plaintiff describes these materials as "documents that contained client social security numbers, dates of birth, minor children's dates of birth, client bank account information, client contact information, and the firm's general account information and trust account information." Complaint at 3 (¶ 22).

On December 21, 2022, Plaintiff alleges that Ms. Nelson notified Plaintiff's owner, Ms. Stacy H. Kirven, that she would be resigning and submitted a letter to that effect. *See id.* (¶ 19); *see also* Exhibit H to Complaint. In this letter, Ms. Nelson gave two weeks' notice and described how she had been offered a paralegal position at another law firm that better fit her personal needs. *See* Exhibit H to Complaint.

On December 29, 2022, Plaintiff alleges that it "discovered that [Ms. Nelson] had downloaded client case files to her personal computer and confronted her [Ms. Nelson]." Complaint at 3 (¶ 20). Plaintiff alleges that Ms. Nelson admitted "that she had been downloading Kirven Law, LLC's client documents and files to her personal computer from Clio." *Id.* (¶ 21). Plaintiff alleges that Ms. Nelson "stated that she had been downloading 'a few documents to use as examples for school.'" *Id.*

Plaintiff alleges that Ms. Nelson was "not authorized to access Clio or client information outside of business hours or from her home computer." *Id.* at 4 (¶ 23). Plaintiff attached Exhibit I to support this allegation. *See id.*; *see also* Exhibit I to Complaint. Exhibit I consists of a text message chain from early December 2022 wherein, it appears, Ms. Kirven, Plaintiff's owner, tells Ms. Nelson "I'd like to not have people working from home. It just creates confusion and a lack of communication." Nowhere in the Complaint or in Exhibit I does Plaintiff allege that it had an express policy against employees working from home, accessing materials from home computers to facilitate their work for Plaintiff, or logging in to their email accounts from home. *See generally* Complaint, Exhibit A to Complaint, Exhibit I to Complaint. Nor does Plaintiff allege that employees who provide two weeks' notice or otherwise indicate that they will be resigning at some specified date in the future are restricted from accessing, downloading, or reviewing materials on Clio. *See generally* Complaint.

The very next day, December 30, 2022, Plaintiff filed the instant lawsuit against Ms. Nelson. There, Plaintiff stated three discrete claims for relief—breach of contract for Ms. Nelson's alleged violation of the CPP, violation of the Defend Trade Secrets Act (DTSA), 18 U.S.C. § 1831 *et seq.*, and violation of Wyoming Uniform Trade Secrets Act (WUTSA), Wyo. Stat. Ann. § 40-24-201 *et seq.*— as well as a request for a preliminary and permanent injunction. *See* Complaint at 4-8. Plaintiff seeks compensatory damages, punitive damages, and reasonable attorney's fees. *See id.* at 4 (¶ 5), 5 (¶ 10), 7 (¶¶ 7-8). In its request for injunctive relief, Plaintiff seeks a preliminary and permanent injunction restraining Ms. Nelson from using or disclosing any documents, information, or trade secrets downloaded from Plaintiff's Clio to her personal computer as well as "any information obtained or learned from her employment with Plaintiff." *See id.* at 7-8 (¶ 7).

/ / /

### III.   LEGAL STANDARD

A defendant may assert, by motion, a defense that a plaintiff's complaint fails to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010).

"[W]hen a plaintiff attaches a written document to his complaint as an exhibit, we consider it part of the complaint for all purposes, including in a Rule 12(b)(6) dismissal.  *Frey v. Town of Jackson*, 41 F.4th 1223, 1229 (10th Cir. 2022); *see also* Fed. R. Civ. P. 10(c).  "Consideration of those documents does not convert a Rule 12(b)(6) motion into one for summary judgment."  *Frey*, 41 F.4th at 1229 (citing *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010)).

While this Court accepts as true the allegations contained in a complaint, this tenet "is inapplicable to legal conclusions."  *Ashcroft*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  A claim is plausible if the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Toone v. Wells Fargo Bank, NA.*, 716 F.3d 516, 521 (10th Cir. 2013) (quoting *Ashcroft*, 556 U.S. at 678).

This Court has jurisdiction to hear and resolve this motion pursuant to 28 U.S.C. § 1331 as at least one of Plaintiff's claims arises expressly under federal law and Plaintiff's remaining claims are all part of the same case or controversy, *see* Notice of Removal (ECF No. 1) at 2-7.

### IV.   PLAINTIFF HAS FAILED TO STATE A BREACH OF CONTRACT CLAIM

Plaintiff has claimed that Ms. Nelson breached the CPP by accessing, downloading, and/or saving certain client files or information from Clio to her home computer.  However, according to

the CPP's plain terms, which Plaintiff purports to have attached to its Complaint, Ms. Nelson agreed only "not to **disclose** confidential information." *See* Attachment A to Complaint. Plaintiff has not alleged that Ms. Nelson disclosed any confidential information to anyone. Nor has Plaintiff alleged that it has actually suffered any damages or that it is entitled to recover damages in this case. Thus, Plaintiff has failed to state a claim upon which relief may be granted and this Court should dismiss Plaintiff's claim for breach of contract.

Because this Court is exercising supplemental jurisdiction over Plaintiff's breach of contract claim in a federal question lawsuit, this Court should apply the substantive law of the forum state—in this case, Wyoming law. *See BancOklahoma Mortgage Corp. v. Capital Title Co.*, 194 F.3d 1089, 1103 (10th Cir. 1999); *O'Tool v. Genmar Holdings, Inc.*, 387 F.3d 1188, 1194 (10th Cir. 2004).

Under Wyoming law, breach of contract generally involves three elements. *See J.C. Energy, LLC v. Hall*, No. 14-CV-236-ABJ, 2015 U.S. Dist. LEXIS 132656, at *16 (D. Wyo. Sep. 28, 2015). "The elements for a breach of contract claim consist of a lawfully enforceable contract, an unjustified failure to timely perform all or any part of what is promised therein, and entitlement of injured party to damages." *Reynolds v. Tice*, 595 P.2d 1318, 1323 (Wyo. 1979). "In an action for breach of contract, the damages awarded are designed to put the plaintiff in the same position as if the contract had been performed, less proper deductions." *Capshaw v. Schieck*, 2002 WY 54, ¶ 10, 44 P.3d 47, 52 (Wyo. 2002).

Here, Plaintiff has failed to allege sufficient facts to demonstrate the second and third elements of breach of contract. That is, Plaintiff has not alleged that Ms. Nelson failed to perform any promises contained in the relevant contract—the CPP. Nor has Plaintiff alleged that it is entitled to damages here.

Plaintiff has alleged that Ms. Nelson accessed, downloaded, and/or saved to her home computer files, documents, and/or information that Plaintiff believes are confidential.  *See* Complaint at 2 (¶ 12), 3 (¶¶ 15, 18, 21-22), 4 (Claim I, ¶ 4).  Plaintiff has alleged that Ms. Nelson's actions were unauthorized.  *See id.* at 4 (¶ 23).  Plaintiff alleges that Ms. Nelson breached the CPP through this conduct.  *See id.* (Claim I, ¶ 4).

However, Plaintiff alleges that Ms. Nelson pledged simply "not to disclose confidential information" upon penalty of "disciplinary action (including possible termination)."  *See* Exhibit A to Complaint.  Consequently, Ms. Nelson contractual obligation was limited to not sharing or disclosing confidential information to others.  *See id.*  Plaintiff does not allege that Ms. Nelson failed to keep this promise.  *See generally* Complaint at 2-4.  Accordingly, Plaintiff has failed to allege Ms. Nelson's breached the CPP.

Furthermore, Plaintiff does not allege that Ms. Nelson disclosed any *confidential information*.  That is, Plaintiff does not allege that Ms. Nelson wrongfully obtained, used, or shared "information . . . about Kirven Law, LLC, or its clients . . . that is not otherwise publicly available."  *See* Exhibit A to Complaint.  Instead, Plaintiff alleges that Ms. Nelson accessed, downloaded, or saved a variety of publicly filed pleadings and related litigation materials that are, by necessity, shared with others.  *See* Exhibit G to Complaint.  Plaintiff has not alleged that any of the materials Ms. Nelson supposedly accessed, downloaded, or saved related to pending litigation matters or were prepared in anticipation of future litigation.  *See generally* Complaint at 2-4.

The United States Constitution and local court rules generally require that pleadings filed in court and other records of court proceedings are publicly available.  *See Richmond Newspapers v. Virginia*, 448 U.S. 555, 580–581 (1980) (analyzing U.S. CONST., amends. I, XIV); Rules 3, 4 of Wyoming Rules Governing Access to Court Records (the "Access Rules").  Typically, a party

must, in the usual course, file a motion to limit public access to information in a case record.  *See* Access Rule 8.

Additionally, discovery requests or responses are, by their nature, shared with others in the ordinary course of business.  *See* W.R.C.P. 5(a); F.R.C.P. 5(a).  A party may seek an order of protection or stipulation to prohibit disclosure of, designate as confidential, highly confidential/attorney's eyes only, or otherwise limit general access to discovery materials, requests, or responses, *see* W.R.C.P. 26(c), 29; *see also* F.R.C.P. 26(c), 29(a)-(b).  However, barring such a motion and order or stipulation, discovery requests, responses, and materials produced through discovery are generally shared with others and are not *per se* confidential.  *See Williams v. Vail Resorts Dev. Co.*, No. 02-CV-16-J, 2003 U.S. Dist. LEXIS 27793, at *17 (D. Wyo. Nov. 14, 2003) (citing *Penthouse Int'l Ltd. v. Playboy Enters.*, 663 F.2d 371, 391 (2d Cir. 1981)); *Exum v. U.S. Olympic Committee*, 209 F.R.D. 201, 206 (D. Colo. 2002) ("[T]he party seeking the protective order must show that disclosure will result in clearly defined and serious injury to the party seeking protection.") (citing *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994)).

To be sure, Plaintiff does allege that some of the documents Ms. Nelson downloaded "contained client social security numbers, dates of birth, minor children's dates of birth, client bank account information, client contact information, and the firm's general account information and trust account information."  Complaint at 3 (¶ 22).  Of course, these categories of information are largely non-public and highly sensitive.  But, as described above, Plaintiff also alleges that the materials Ms. Nelson downloaded were publicly filed pleadings, discovery materials sent to or received by others, affidavits, proposed orders, and written closing arguments.  *See* Complaint at 4-5 (Claim II, ¶ 3).  If the information contained in these documents were filed by Plaintiff

(pleadings), shared by Plaintiff with others (discovery materials), or presented to a judge or jury at trial (closing argument) as Plaintiff alleges, then, categorically, they have been transformed from nonpublic to publicly available. And, once again, Plaintiff does not allege that Ms. Nelson has shared or disclosed any of these materials with or to anyone else.

Perhaps, Plaintiff is pleading in the alternative or pleading inconsistently, as is its right. *See* F.R.C.P. 8(d)(2)-(3). But Plaintiff makes no such distinction between the clearly confidential personal and financial records identified in ¶ 22 and the publicly available or readily shared litigation materials identified in Claim II, ¶ 3. If Plaintiff is, in fact, pleading in the alternative or pleading inconsistently, Ms. Nelson would ask this Court to order Plaintiff to amend its Complaint in order to provide a more definite statement pursuant to F.R.C.P. 12(e).

What's more, Plaintiff's allegations of fact, including Exhibit A, show that Plaintiff was not entitled to damages if any employee, including Ms. Nelson, who signed off on the CPP improperly disclosed confidential information. *See* Exhibit A to Complaint. Instead, the sanctions available include "disciplinary action" and "possible termination." *See id.* Worse, Plaintiff does not allege that Ms. Nelson's actions have caused it any actual harm such as bad outcomes for pending matters, loss of prospective or current clients, reputational harm, loss of unique records or documents, disclosure of trial strategy to opposing parties, or any other express harms. *See generally* Complaint at 2-4. Plaintiff does not allege that Ms. Nelson unjustly benefited from reviewing or accessing these materials. *See id.* In short, Plaintiff does not allege any entitlement to damages here.

For all these reasons, Plaintiff has failed to state a claim for breach of contract. This Court should dismiss Plaintiff's claim.

## V.    PLAINTIFF HAS FAILED TO STATE A "TRADE SECRET" CLAIM UNDER FEDERAL OR WYOMING LAW

Plaintiff has not alleged sufficient facts to show that any of the information supposedly downloading by Ms. Nelson constitutes a cognizable trade secret.  Accordingly, Ms. Nelson requests that this Court dismiss Plaintiff's federal and state trade secret claims.

The federal "trade secrets" law—the Defend Trade Secrets Act (DTSA), 18 U.S.C. § 1831 *et seq.*, and the Wyoming Uniform Trade Secrets Act (WUTSA), Wyo. Stat. Ann. §§ 40-24-101 *et seq.*—define "trade secret" in similar terms and provide similar protections.  Given the similarity of their terms and protections, this Court may review the sufficiency of Plaintiff's DTSA and WUTSA claims through the lens of the DTSA and related caselaw.  *See, e.g. First Interstate Bancsystem, Inc. v. Hubert*, No. 021-CV-0067, 2022 U.S. Dist. LEXIS 127748, at *25 (D. Wyo. July 15, 2022); *Trial Lawyers Coll. v. Gerry Spences Trial Lawyers Coll. at Thunderhead Ranch*, No. 1:20-cv-80-JMC, 2022 U.S. Dist. LEXIS 172790, at *8 (D. Wyo. Sep. 22, 2022) ("The elements to establish a claim for misappropriation of trade secrets are essentially the same under both the Defend Trade Secrets Act and the Wyoming Uniform Trade Secrets Act.").

To allege a DTSA trade secret claim, a plaintiff must show "(1) the existence of a trade secret; (2) the acquisition, use, or disclosure of the trade secret without consent; and (3) that the individual acquiring, using, or disclosing the trade secret knew or should have known the trade secret was acquired by improper means."  *Assessment Technologies Inst., LLC v. Parkes*, ___ F. Supp. 3d ___, ___ 2022 U.S. Dist. LEXIS 70421, 2022 WL 1102461, *21 (D. Kan. March 2, 2022) (quoting *API Ams. Inc. v. Miller*, 380 F. Supp. 3d 1141, 1148 (D. Kan. 2019)); Wyo. Stat. Ann. § 40-24-101(a)(ii)(A).

The DTSA defines "trade secret" as "all forms and types of financial, business, scientific, technical, economic, or engineering information" so long as the owner takes "reasonable measures to keep such information secret" and "the information derives independent economic value . . . from [that information] not being generally known to, and not being readily ascertainable through proper means by, another person."  18 U.S.C. § 1839(3)(A)-(B).  The WUTSA defines trade secret "similarly" as "[i]nformation, including a formula, pattern, compilation, program, device, method, technique, or process, that . . . [d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy."  *Trial Lawyers Coll.*, 2022 U.S. Dist. LEXIS 172790, at *9 (quoting Wyo. Stat. Ann. § 40-24-101(a)(iv)).

Here, Plaintiff alleges that the work product and other litigation materials produced by its attorneys are trade secrets.  *See* Complaint at 4-5 (Claim II, ¶¶ 3-5), 6 (Claim III, ¶¶ 2-4).  Plaintiff alleges that these materials include "legal research for cases, findings of fact and conclusions of law, written closing arguments, hand-written and typed attorney notes, and hundreds of pleadings drafted by attorneys employed by Plaintiff."  Complaint at 4-5 (Claim II, ¶ 3).  Plaintiff alleges that its attorneys have completed the prerequisites and ongoing requirements to practice law and relied on their education, training, and experience to "make legal arguments."  *Id.* at 5 (Claim II, ¶ 4).  Plaintiff then alleges, without more, "[t]he information contained in these documents qualify as trade secrets."  *Id.* at 5 (Claim II, ¶ 5).  Plaintiff further alleges, without more, that its business depends upon keeping these trade secrets confidential and that these trade secrets have "inherent value."  *Id.* at 6 (Claim III, ¶ 2).

Plaintiff has not alleged sufficient facts to plausibly establish that the work product and other litigation materials referred to in its Complaint are cognizable trade secrets or subject to trade secret protection for three reasons. First, attorney work product is not categorically the same as a trade secret or subject to trade secret protections. Second, Plaintiff has not made sufficient allegations to show that its boilerplate descriptions of work product and litigation materials are even subject to work product protection, let alone are trade secrets in this particular instance. Third, Plaintiff has not alleged that its work product and litigation materials derive economic value from not being generally known or readily ascertainable .

The work product doctrine "shelters the mental processes of the attorney, providing a privileged area within which a lawyer can analyze and prepare a client's case." *Amcol Int'l Corp. v. Statewide Elec. Co.*, No. 07-CV-211-J, 2008 U.S. Dist. LEXIS 130625, at *5 (D. Wyo. June 13, 2008) (citing *United States v. Nobles*, 422 U.S. 225, 237–238 (1975)). In general, the work product doctrine prevents discovery of an attorney's work product. *See id.* at *4 (citing F.R.C.P. 26(b)(3)). However, "the privilege derived from the work product doctrine is not absolute." *Id.* at *5.

"Unlike the case of a trade secret, erroneous disclosure of work-product does not make almost certain the immediate destruction of a protected property right." *Am. Express Warehousing, Ltd. v. Transamerica Ins. Co.*, 380 F.2d 277, 281 (2d Cir. 1967). Further, "[t]he interest protected [by the work product doctrine] is not only qualified but intangible and difficult to relate to immediate harm." *See id.*; *see also Boughton v. Cotter Corp.*, 10 F.3d 746, 750 (10th Cir. 1993) (citing with approval *Am. Express Warehousing*, 380 F.2d at 281–282). Accordingly, assuming that some document is or contains attorney work product, this status alone does not transform the document or information memorialized in the document into a trade secret. *See Am.*

*Express Warehousing*, 380 F.2d at 281–282.  While work product may be a kind of legally protected information, it is not necessarily the same as a trade secret.  *See id.*

In *Whiteslate, LLP v. Dahlin*, No. 20-cv-1782-W (BGS), 2021 U.S. Dist. LEXIS 126540 (S.D. Cal. Jul. 7, 2021), the court considered a 12(b)(6) motion to dismiss a law firm's misappropriation of trade secrets claim against a former attorney where the law firm alleged that the relevant trade secret material consisted of "contracts, document templates, and other work product" as well as the law firm's client list and database followed by "a boilerplate definition of what constitutes a valid trade secret."  *Whiteslate*, 2021 U.S. Dist. LEXIS 126540, at *15.  The court granted the defendants' motion to dismiss on the law firm's trade secret claim because the law firm's allegations failed to allege a trade secret with sufficient particularity.  *Id.*  The mere incantation of "work product" did not suffice.  *See id.*

Here, like the firm in *Whiteslate*, Plaintiff's description of its trade secret materials amounts to nothing more than various formulations of the term and subspecies of what could be classified as "attorney work product."  *See* Complaint at 4-5 (Claim II, ¶¶ 3-5), 6 (Claim III, ¶¶ 2-4).  While in this district, a plaintiff may allege a trade secret generally to avoid public disclosure of the trade secret through its complaint, *see Balfour Beatty Infrastructure, Inc. v. Am. Track Generations LLC*, No. 19-CV-249-F, 2020 U.S. Dist. LEXIS 262320, at *13 (D. Wyo. June 22, 2020), the plaintiff must at least allege enough information to give a defendant notice of "the factual basis for its trade secret claims."  *See Sticky.io, Inc. v. Martingale Software, LLC*, Civil Action No. 21-cv-00664-RM-STV, 2021 U.S. Dist. LEXIS 227368, at *9 (D. Colo. Oct. 27, 2021) (quoting *Packaging Corp. of Am. v. Croner*, 419 F.Supp.3d 1059, 1065 n.3 (N.D. Ill. 2020)).  Plaintiff's conclusory invocation of the work product doctrine or recitation of generally sensitive litigation materials is insufficient to plausibly allege a cognizable trade secret.

What's more, Plaintiff does not even allege sufficient facts to show that its alleged trade secret materials constitute attorney work product. The party asserting that some materials are attorney work product or are subject to protection from disclosure as work product "has the burden of showing that privilege exists, and that the specific privilege applies in those circumstances." *Amcol Int'l Corp.*, 2008 U.S. Dist. LEXIS 130625, at \*4. To this end, the party making the work product claim must satisfy a two-prong showing establishing (1) when it anticipated litigation and that the documents at issue were created after that time, and (2) that the documents were created in anticipation of litigation by an attorney or at an attorney's direction. *See id.* at \*5-\*6.

Here, Plaintiff alleges that the trade secret materials were prepared by attorneys, *see* Complaint at 4-5 (Claim II, ¶ 3), but does not make any other allegations, beyond conclusory statements, sufficient to show that these materials qualify as work product. *See id.* For example, Plaintiff does not allege that these materials were created in anticipation of litigation, when it anticipated litigation, or that these materials were created after that time. *See generally* Complaint. In other words, Plaintiff's naked allegations do not state a *prima facie* case that these materials are attorney work product or subject to work product protections.

Setting these problems aside for a moment, yet another problem exists with Plaintiff's alleged trade secret. The non-public or secret nature of work product is fleeting. Naturally, in the ordinary course, an attorney will eventually use her work product through a publicly filed pleading or during a public hearing (motion hearing, trial, etc.) or she will serve her work product on others during discovery or prefiling litigation activity (preservation letters, demand letters, and insurance negotiations). At that time, what was once fiercely guarded and subject to legal protections will become forever public and readily accessible through court records. *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 & n.17 (1980).

Plaintiff has not alleged that any of its supposed work product remains unfiled or otherwise withheld from the public record. *See generally* Complaint. Plaintiff has not alleged that these materials came from client files for pending or unresolved, ongoing litigation matters. *See id.* Thus, Plaintiff has not alleged that its work product materials remain non-public or inaccessible to others.

Finally, Plaintiff has not alleged sufficient facts to show that its alleged trade secret materials have any economic value derived from not being generally known or readily ascertainable by others who could obtain economic value from their disclosure or use. Instead, Plaintiff only states that these materials have "inherent value," and its business depends upon their being confidential. *See* Complaint at 6 (Claim III, ¶ 2).

To constitute a trade secret, information must have independent economic value derived from its not being generally known or readily ascertainable by others who could profit from possessing or using the information. *Select Energy Servs., Inc. v. Mammoth Energy Servs., Inc.*, No. CIV-19-28-R, 2019 WL 1434586, at *2 (W.D. Okla. Mar. 29, 2019) (citing 18 U.S.C. § 1839(3)).

Plaintiff does not make any meaningful or plausible allegations about the economic value of any of its claimed trade secret materials. *See generally* Complaint. Plaintiff certainly does not make a plausible case that materials prepared in the past for specific clients and that were publicly filed and accessible to the general public have some special economic value because a person would need to go to the clerk's office to access them. Nor does Plaintiff assert anywhere that these client-specific and case-specific have any economic value beyond value to the particular client or matter.

Because a trade secret must have independent economic value derived from its being not generally known or readily ascertainable by others who could make profitable use of the trade secret, litigation materials that have been publicly filed, publicly presented, or served on others categorically do not fit the bill of "not generally known" or "not readily ascertainable by others." Worse, particularized litigation materials have minimal *independent* economic value—their economic value, if any, comes from application to or use in other similar matters; that is, their economic value is rarely, if ever, independent of a particular client, particular kind of litigation, or particular set of facts at all.

Trade secrets generally merit blanket legal protection because their improper disclosure causes the immediate destruction of a property right. *See Am. Express Warehousing*, 380 F.2d at 281. By contrast, attorney work product is only afforded contextual legal protection to facilitate an attorney's trial preparation and casework, but otherwise the interest protected is "intangible and difficult to relate to immediate harm." *See id.* A lawyer's work product, which is destined for the courtroom, should only remain secret during its preparation; once it is submitted to the court—through a pleading, a motion, a hearing before a judge, a trial to a jury or a judge, or for any other reason—the public has a general right "to inspect and copy" judicial records and documents. *See Nixon v. Warner Comms.*, 435 U.S. 589, 597–598 (1978).

Because Plaintiff has not alleged sufficient facts to show that its documents and litigation materials are trade secrets (or even subject to work product protection), Plaintiff has failed to state a claim for misappropriation of trade secrets under federal or Wyoming law. Thus, Ms. Nelson requests that this Court dismiss Plaintiff's trade secret claims.

/ / /

/ / /

18

## VI.    PLAINTIFF HAS FAILED TO STATE A CLAIM JUSTIFYING A PRELIMINARY OR PERMANENT INJUNCTION

Because Plaintiff has failed to allege the existence of a valid, protectable trade secret, Plaintiff cannot state a claim for injunctive relief under federal or Wyoming law. Both sources of law allow an aggrieved party to seek injunctive relief. *See* 18 U.S.C. § 1836(b)(3)(A); Wyo. Stat. Ann. § 40-24-102(a). However, injunctive relief to prevent a party from any actual or threatened misappropriation depends upon the existence of a protectable trade secret. *See* 18 U.S.C. § 1836(b)(3)(A)(i); Wyo. Stat. Ann. § 40-24-102(a). Plaintiff has failed to allege sufficient facts to state a claim that a legally protectable trade secret exists in this case. Accordingly, Plaintiff cannot state a claim for injunctive relief predicated upon its deficient pleading.

Additionally, Plaintiff's request for injunctive relief does not specify or allege any particular facts about how Ms. Nelson is "causing harm" or is "likely to cause future harm, which is irreparable" to Plaintiff. *See* Complaint at 7-8 (Claim IV). Instead, Plaintiff relies entirely on conclusory, boilerplate allegations that do not cross the line from merely conceivable to plausible. *See id.* For this separate reason, Plaintiff has failed to state a claim for injunctive relief.

Last, Plaintiff's request for injunctive relief includes restraining Ms. Nelson from using or disseminating "any information obtained or learned from her employment with Plaintiff." Complaint at 8 (Claim IV, ¶ 7). Plaintiff does not specify in this request that Ms. Nelson be prohibited from using confidential information. *See id.* Under the DTSA, this Court may not issue a restraining order that prevents a person from entering into an employment relationship or that places condition on such employment based "merely on the information the person knows." *See* 18 U.S.C. § 1836(b)(3)(A)(i)(I). Further, equity weighs against prohibiting Ms. Nelson from generally using information she has learned during her time working as a paralegal for Plaintiff.

Ms. Nelson makes a living as a paralegal.  That is how she supports herself and her minor child.

Plaintiff should not be granted an injunction that does not further, preserve, or protect Plaintiff's

property interests, but only inflicts harm on Ms. Nelson.  If nothing else, this Court should dismiss

this aspect of Plaintiff's claim for injunctive relief.

## VII.    CONCLUSION

**WHEREFORE**, Ms. Nelson respectfully requests that this Court dismiss Plaintiff's claims

against her pursuant to Rule 12(b)(6) of the Federal Rules of Civil  Procedure.


Dated: January 24, 2023.                    THE FULLER & SEMERAD LAW FIRM

By: */s/Ryan A. Semerad*
     Ryan A. Semerad, Esq.
     Wyoming State Bar No. 7-6270
     242 South Grant Street
     Casper, Wyoming 82601
     Telephone: 307-265-3455
     Facsimile: 307-265-2859
     Email: semerad@thefullerlawyers.com

     *Attorney for Defendant Kari Nelson*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the 24th day of January, 2023, I electronically filed the foregoing instrument with the Clerk of the Court for the United States District Court for the District of Wyoming by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  I further certify that I served a copy of this instrument on Plaintiff Kirven Law, LLC, through its counsel, correctly addressed, via **U.S. MAIL** and **EMAIL DELIVERY**, as follows:

Jordan J. Camino
Wyoming State Bar No. 7-5510
Camino Law, LLC
75 North Main Street
Buffalo, WY 82834
Tel: (307) 278-0226
Fax: (307) 200-0074
Email: jordan@camino.law

Mistee L. Elliott
Wyoming State Bar No. 6-3549
Casey R. Terrell
Wyoming State Bar No. 7-6088
Crowley Fleck, PLLP
101 W. Brundage Street
Sheridan, WY 82801
Tel: (307) 673-3000
Fax: (307) 672-1732
Email: melliott@crowleyfleck.com
        cterrell@crowleyfleck.com

*Attorneys for Plaintiff Kirven Law, LLC*

/s/Ryan A. Semerad
The Fuller & Semerad Law Firm

21